

ORIGINAL

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JESSE J. BRYANT, #00142314, | * * * | Civil No. |
| Petitioner, | * * | Orig. Crim. No. 92004686DI |
| v. | * * | |
| THOMAS L. CARROLL, Warden, DCC Smyrna, | * * * | |
| Respondent. | * | |

07-688

### MEMORANDUM OF LAW IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2254

As a matter of introduction, the Petitioner respectfully submits that the events which transpired in the instant case constituted a denial of the Petitioner's rights to due process of law as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, as well as the right to be free from cruel and unusual punishment as guaranteed by the Sixth and Fourteenth Amendment to the United States Constitution. These errors were not merely procedural, but substantially infringed upon the Petitioner's constitutional right to due process of law. At a minimum, the Petitioner requests a hearing be held on these issues.

### STATEMENT OF THE ISSUES

I. The Delaware judiciary erred in ruling that the Petitioner's rights to a jury trial and due process of law were not violated when he was punished upon facts that were neither submitted to a jury nor proved beyond a reasonable doubt.

II. The Petitioner is entitled to an evidentiary hearing on these matters.

## STATEMENT OF JURISDICTION

Federal law provides a safety net for defendant's whose constitutional rights have been violated. Title 28 U.S.C. § 2254 is a statute that provides an avenue for redress of State court Federal constitutional violations in a Federal court. "[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Petitioner feels that his best opportunity to obtain fair and substantial justice is in the Federal court system, away from the blinders of the State court system that believes that anyone convicted of a felony is without substantial rights.

## ARGUMENT

In order to succeed in a § 2254 motion, a Petitioner must show that the adjudication of a claim in State court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law." 28 U.S.C. § 2254 (d)(1). The Constitution, as the framework from which all Federal law springs, must not be violated as applied to the Petitioner.

In order to raise an issue in a § 2254 motion, an individual must exhaust all other State remedies on a given issue, which ultimately requires that the issue be appealed to the State Supreme Court. "An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the court of the State[.] * * * An applicant shall not be deemed to have exhausted the remedies available in the courts of the State * * * if he has the

right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(b), (c).

In the appeal of the denial of his post-conviction motion in the Supreme Court of Delaware, the Petitioner raised the substantive issue raised herein as liste din the Statement of Issues. As this issue was litigated to the highest court in the State, it has been preserved for inclusion in this § 2254 petition. If the answer to the issue is in favor of the Petitioner, this petition must be granted.

I. **The Delaware Judiciary Erred in Ruling That the Petitioner's Rights to a Jury Trial and Due Process of Law Were Not Violated When He Was Punished upon Facts That Were Neither Submitted to a Jury Nor Proved Beyond a Reasonable Doubt.**

The United States Constitution guarantees each defendant a trial by jury wherein no punishment is imposed until a jury determines the defendant guilty of particular conduct beyond a reasonable doubt. See U.S. Const. Amends. V, VI. At odds with that system is the sentencing practices at issue in the State of Delaware, which allows a defendant to receive an enhanced sentence based upon factors that have not been submitted for proof to a jury for proof beyond a reasonable doubt.

In his dissent in Harris v. United States, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002), Justice Thomas reminded us that due process requires that every fact necessary to constitute a crime must be found beyond a reasonable doubt by a jury if that right is not waived. Id. at 2424 (Thomas, J., dissenting), citing In re Winship, 397 U.S. 358, 364, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970). Society has long recognized a necessary link between punishment and crime. Harris, 122 S.Ct. at 2424 (Thomas, J., dissenting), citing Apprendi v. New Jersey, 530 U.S. 466, 478, 120 S.Ct. 2348 (2000) ("The defendant's ability to predict with certainty the judgment from

3

the face of the felony indictment flowed from the invariable linkage of punishment with crime"). "Why, after all, would anyone care if they were convicted of murder, as opposed to manslaughter, but for the increased penalties for the former offense, which in turn reflect the greater moral opprobrium society attaches to the act?" Harris, 122 S.Ct. at 2424 (Thomas, J., dissenting).

If a statute annexes a higher degree of punishment based on certain circumstances, exposing a defendant to that higher degree of punishment requires that those circumstances be charged in the indictment and proved beyond a reasonable doubt. Apprendi, 530 U.S. at 480, quoting J. Archbold, Pleading and Evidence in Criminal Cases 51 (15th ed. 1862).

But sentencing practice cannot supersede the United States Constitution. Such practice should not be used to accomplish an "end-run" around the fundamental right to trial by a jury and to usurp the role of the jury. If the jury finds a defendant guilty of a range of drug amount that could be as low as five kilograms, the sentencing court should not be permitted to use sentencing guidelines to ignore that verdict, take the jury's role, find responsibility for a higher drug amount, and punish based upon that extra-jury determination at a standard lower than proof beyond a reasonable doubt. See Anderson v. Fuller, 455 U.S. 1028, 1032, 102 S.Ct. 1734 (1982) (Burger, C. J., dissenting) (nothing that courts should not usurp the function of a jury in finding facts).

Recently, the Supreme Court has begun to realize the fundamental defects in way our justice system determines sentences for criminal defendants in a series of decisions. In Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), the Supreme Court held that "other than the fact of a prior conviction, any fact that increases the penalty for crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In Ring v.

4

Arizona, 536 U.S. 584 (2002), the Supreme Court clarified and reaffirmed this rule. The Ring holding is straightforward and clear-cut: The Apprendi rule applies to any aggravating fact necessary to expose a defendant to punishment beyond an otherwise mandatory statutory limit. Id.

After Apprendi, the various courts throughout the country assumed the term "statutory maximum" referred to in Apprendi and Ring, was the maximum sentence set forth under the statute listed in the indictment. The courts have assumed that the term "statutory maximum" does not apply to the various sentencing thresholds established under the Federal sentencing guidelines. The Supreme Court's decision in Blakely v. Washington, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004) changed that and indicated that the courts have been wrong, holding that "the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose **solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. * * *** When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts 'which the law makes essential to the punishment." Blakely v. Washington, 124 S.Ct. at 2537(emphasis in original); see also Ortiz v. State, 2005 Del. LEXIS 43 (2005)(unpublished).

The decision in Blakely was further bolstered by the recent decision issued in United States v. Booker, 125 S.Ct. 738 (2005). In Booker, the Court ruled that sentencing enhancements had to be based upon facts submitted to a jury for proof beyond a reasonable doubt. Id. at 745. The decision flowed from Justice Stevens' worry that as sentencing enhancements became greater, "the jury's finding of the underlying crime became less significant." Id. at 751. As such, the Sixth Amendment right to a jury trial was being usurped, requiring change in order to

preserve "Sixth Amendment substance." Id. Furthermore, the Court again reiterated its commitment to the ideal that any fact other than a prior conviction which is necessary to support a sentence exceeding the statutory maximum authorized by the jury's finding must be proved to a jury beyond a reasonable doubt. Id. at 754.

The Petitioner submits that compliance with the Sixth Amendment requires "any fact that increases the penalty for a crime beyond the prescribed statutory maximum" to be proved beyond a reasonable doubt. Apprendi, 530 U.S. at 490. The prescribed "'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Booker, 125 S.Ct. at 755; Blakely, 124 S. Ct. at 2536. The jury verdict alone - or the defendant's admission alone - "must authorize the sentence." Id. Therefore, the upper bound of the appropriate guideline range, based on facts proven to a jury beyond a reasonable doubt or admitted by the defendant, establishes the relevant statutory maximum for sentencing purposes.

The Petitioner submits that the increase in his sentence was an enhancement, necessitating a finding of fact by a jury. What constitutes a sentencing enhancement was decided in Jones v. United States, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999). In that case, the United States Supreme Court was dealing with the question of whether a particular facet of a statute was an element of the crime or a sentencing enhancement. Id. at 1217. In making a determination of this kind when the statutory language is unclear, the Court undertook statutory interpretation, stating that those parts of the statute necessary to define a complete offense and its punishment were elements of the crime. Id. at 1221. However, in the face of further interpretive doubt, the Court stated "where a statute is susceptible of two constructions, by one of which

6

grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter." Id. at 1222(quoting United States ex rel. Attorney General v. Delaware & Hudson Co., 213 U.S. 366, 53 L.Ed. 836, 29 S.Ct. 527 (1909)).

In the instant matter, there can be little doubt that the increase in the Petitioner's sentence was a sentencing enhancement and not an element of the offense. Consider, the Petitioner was convicted and served thirteen years of incarceration before his sentence was "corrected." Clearly, a complete offense and punishment had been meted out. Further, in light of such an ambiguous issue, that being whether the parole portion of the sentence is an element of the offense or a sentencing enhancement, the Delaware judiciary should have deferred to the course that was less likely to invoke constitutional violations, that being that the parole question at issue was a sentencing enhancement that could have been dealt with simply and effectively by providing for the protections afforded by the line of cases beginning with Apprendi.

Unfortunately, the Delaware judiciary found that the Petitioner was time-barred from raising this issue in the State court, finding that the aforementioned situation was not one of a constitutional violation that undermined the fundamental integrity of the proceedings. (Order, 7/18/07 at 4). The fact that the Petitioner's sentence was enhanced by judicial fact finding well after he had been sentenced certainly impugns the integrity of the proceedings against the Petitioner. After all, permitting defendants to have their sentences enhanced at the whim of a trial judge is a terrifying and unconstitutional concept.

The Petitioner submits that his post-conviction motion was properly filed and should have been determined on its merits because the motion met the criteria for filing under Delaware Superior Court Criminal Rule 61. Although Rule 61 has a three-year limitation period under

subsection (i)(1), an exception to the time limit exists when the petitioner submits a reasonable or "colorable" claim that a miscarriage of justice occurred because of a constitutional violation. Rule 61(i)(5). Generally speaking, in order to invoke Rule 61(i)(5) and bypass the procedural bars, a defendant must raise a colorable claim that a miscarriage of justice has occurred and show that the mistake undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading to his conviction. Gattis v. State, Del. Supr., 697 A.2d 1174 (1997). The Petitioner notes that, while it may be argued that the Petitioner may not raise issues based solely upon State law, such as the procedural requirements of a State post-conviction motion, the Petitioner notes that the procedural issue at bar centers upon whether a constitutional violation occurred against the Petitioner. As such, in evaluating the substantive portion of this argument, this Court will necessarily determine if a prejudicial constitutional error has occurred. If said error occurred, then the decision regarding the procedural issue was also in error.

While the punishment available for the crime at issue may have been a term of life incarceration without the possibility of parole, such was not the sentence issued to the Petitioner. The sentence was not corrected until thirteen years later, after the Petitioner had relied upon the original sentence in an effort to gain parole. The trial court erred in applying an improper sentence, and said error could only be corrected by adherence to the Fifth and Sixth Amendments to the United States Constitution. A miscarriage of justice has occurred because the sentence imposed upon the Petitioner was done so in violation of his constitutional rights to due process of law and a jury trial. Clearly, had such rights been protected, the Petitioner would not have received the unduly harsh sentence that was issued in this matter when the Petitioner was re-

sentenced. There can be little doubt that the Petitioner raised a colorable claim of a constitutional violation that should have been decided by the State courts upon the merits.

Further, the Petitioner notes that Delaware Superior Court Criminal Rule 61 allows a petitioner three years from the time that a new rule of constitutional law has been declared retroactive by the United States Supreme Court in which to file a timely motion for post-conviction relief in Delaware. Rule 61(i)(1). Because the decisions in Blakely v. Washington, 124 S.Ct. 2531 (2004) and United States v. Booker, 125 S.Ct. 738 (2005), upon which the substantive issue raised in the post-conviction motion relied, were only recently issued (Blakely being the first in June, 2004), the Petitioner's post-conviction motion was filed as soon as was practicable and well within the three year period of limitations for new rules of constitutional law.

Unfortunately, the Delaware judiciary found that the aforementioned decisions do not apply retroactively in this matter. The trial court did concede that any analysis of retroactivity had to be conducted under the standard enunciated in Teague v. Lane, 489 U.S. 288 (1989). (Report, 11/2/06 at 9). Although the Blakely decision did not expressly announce its retroactivity, the significance of the holding combined with the Court's decision in Teague, show that the Blakely ruling must be retroactive to cases on collateral review. In her dissent in Blakely, Justice O'Connor noted that "all criminal sentences imposed under the Federal and State guidelines since Apprendi was decision in 2000 arguably remain open to collateral attack" because of the Court's decision in Teague. In Teague, the Court noted that new rules of constitutional procedure would apply if the new rule involves "those procedures that are implicit in the concept of ordered liberty." Teague, 489 U.S. at 311. Such rules vindicate two discreet

9

concerns: the fundamental fairness of the underlying procedure; and the accuracy of that underlying proceeding. Saffle v. Parks, 494 U.S. 484, 495 (1990).

Unfortunately, a five justice majority has recently stated that the decision in Ring v. Arizona, 536 U.S. 610 (2002) applying Apprendi to Arizona's capital sentencing scheme does not apply retroactively under Teague. Schriro v. Summerlin, 124 S.Ct. 2519, 2522, 159 L.Ed.2d 442 (2004). The Court noted that while the rule at issue was fundamental, it was not one "without which the likelihood of an accurate conviction is seriously diminished." Id. at 2521(quoting Teague, 489 U.S. at 313).

Fortunately, in Schriro, the majority's analysis was limited to the Ring rule, as "Arizona law already required aggravating factors to be proved beyond a reasonable doubt." Schriro, 124 S.Ct. at 2521, n.1(citing State v. Jordan, 126 Ariz. 283, 286, 614 P.2d 825, 9292 (1980)). Therefore, the majority's opinion that "judicial fact-finding so 'seriously diminishes accuracy' . . . is simply too equivocal" to meet the second prong of Teague's exception to the rule against retroactivity does not apply to the instant rule under analysis. Schriro, 124 S.Ct. at 2522. The rule at issue in the instant matter deals with judicial fact-finding under the diluted preponderance of the evidence standard.

The shift from the preponderance of the evidence standard to a standard beyond a reasonable doubt is of critical importance in the American justice system. In Cage v. Louisiana, 498 U.S. 39 (1990) the Court emphasized the vital role of the reasonable doubt standard in avoiding convictions based upon factual error:

> [T]he Due Process Clause of the Fourteenth Amendment "protects
> the accused against conviction except upon proof beyond a
> reasonable doubt of every fact necessary to constitute the crime

> with which he is charged." In re Winship, 397 U.S. 358, 364
> (1970) . . . This reasonable doubt standard "plays a vital role in the
> American scheme of criminal procedure. Id. at 363. Among other
> things, it is a prime instrument for reducing the risk of convictions
> resting on factual error.

Cage, 498 U.S. at 39-40 (1990). The decision in In re Winship, 397 U.S. 358 (1970), itself makes clear that the requirement of proof beyond a reasonable doubt is grounded upon accuracy concerns:

> The requirement of proof beyond a reasonable doubt has this vital
> role in our criminal procedure for cogent reasons. The accused
> during a criminal prosecution has at stake interest of immense
> importance, both because of the possibility that he may lose his
> liberty upon conviction and because of the certainty that he would
> be stigmatized by the conviction. Accordingly, a society that
> values the good name and freedom of every individual should not
> condemn a man for commission of a crime when there is
> reasonable doubt about his guilt.

Winship, 397 U.S. at 364. The Court in Winship specifically rejected the margin of error permitted by a preponderance standard:

> There is always in litigation a margin of error, representing error in
> factfindings, which both parties must take into account. Where
> one party has at stake an interest of transcending value - as a
> criminal defendant his liberty - this margin of error is reduced as to
> him by the process of placing on the other party the burden of . .
> .persuading the factfinder at the conclusion of the trial of his guilt
> beyond a reasonable doubt. Due process commands that no man
> shall lose his liberty unless the Government has borne the burden
> of. . . convincing the factfinder of his guilt. To this end, the
> reasonable doubt standard is indispensable, for it impresses on the
> trier of fact the necessity of reaching a subjective state of certitude
> of the facts in issue.

Winship, 397 U.S. at 364. Importantly, the Supreme Court used its decision in Ivan V. v. City of New York, 407 U.S. 203, 205 (1972) to give Winship retroactive effect, as "the major purpose of

the constitutional standard of proof beyond a reasonable doubt announced in Winship was to overcome an aspect of a criminal trial that substantially impairs the truth-finding function."

In this case, the result of the new rule of Blakely—that punishments not based upon jury verdicts or admissions will be vacated—was not dictated by precedent that existed at the time the Petitioner's convictions became final. As a result, in light of the new Blakely rule, the Court's holding of Teague, and the timing of the Petitioner's case, the rule of Blakely should have been applied retroactively to the Petitioner's sentencing. The rights enunciated in the Blakely decision are clearly implicit in ordered concept of liberty.

> The Founders presumably carried this concern from England, in which the right to a jury trial had been enshrined since the Magna Carta. * * * [T]rial by jury has been understood to require that the truth of every accusation, whether preferred in the shape of indictment, information, or appeal, should afterwards be confirmed by the unanimous suffrage of twelve of [the defendant's] equals and neighbors. * * * Those principles are unquestionably applicable to the Guidelines. They are not the product of recent innovations in our jurisprudence, but rather have their genesis in the ideals our constitutional tradition assimilated from the common law.

Booker, 125 S.Ct. at 753. Such practices and concepts insure that criminal defendants are sentenced on the basis of accurate information and only after their constitutional rights have been protected. As such, the concerns of Teague have ben satisfied, and the Blakely and Booker decisions should have been applied retroactively in this matter.

Accordingly, as the Petitioner's sentence was imposed in violation of his constitutional rights to a jury trial and due process of law, his sentence should have been vacated. The Delaware courts' error in failing to do so must now be corrected by this Court, and this matter

must be remanded for re-sentencing in accord with the findings of this Court and the constitutional principles of fair play and substantial justice.

**II.    The Petitioner Is Entitled to an Evidentiary Hearing on These Matters.**

The Petitioner contends that he is entitled to an evidentiary hearing on the issue raised herein. In order to be granted an evidentiary hearing, a habeas corpus petition must allege sufficient facts which, if true, would support the conclusion of law advanced. Townsend v. Sain, 372 U.S. 293, 312, 83 S.Ct. 745, 756, 9 L.Ed.2d 770, 785 (1963); Cristin v. Brennan, 281 F.3d 404 (3d Cir. 2002). A petition for habeas corpus requires a hearing unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. Richardson v. Pa. Bd. of Prob. & Parole, 423 F.3d 282 (3d Cir. 2005).

In the present case, the Petitioner contends that he has set forth facts in his petition that entitle him to relief. Therefore, at a minimum, the Court should order an evidentiary hearing in this matter.

**III.    Conclusion**

For the foregoing reasons, the Petitioner respectfully requests that this Honorable Court grant his petition for writ of habeas corpus or at a minimum, grant him an evidentiary hearing.

Respectfully submitted,

_____
Leo J. Ramunno, Esq.
Attorney for the Petitioner
1205 N. King Street
Wilmington, Delaware 19801
302-654-0660 voice
302-577-2496 fax

Respectfully submitted,

_____
Charles A. Murray, Esquire
Attorney for the Petitioner
27499 Riverview Center Blvd., Suite 113
Bonita Springs, Florida 34134
239-649-7773 voice
239-262-3517 fax

13